Wesley James Furlong (MT Bar No. 42771409)
NATIVE AMERICAN RIGHTS FUND
745 West 4th Ave, Suite 502
Anchorage, AK 99501
Ph. (907) 276-0680
Fax (907) 276-2466
wfurlong@narf.org

Jacqueline De León*
Matthew L. Campbell*
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302-6296
(303) 447-8760
jdeleon@narf.org
mcampbell@narf.org

Samantha Kelty*
NATIVE AMERICAN RIGHTS FUND
1514 P Street, NW (Rear) Suite
Washington, D.C. 20005
(202) 822-0068
kelty@narf.org

Alex Rate (MT Bar No. 11226)
ACLU OF MONTANA
Post Office Box 1968
Missoula, MT 59806
Phone: (406) 224-1447
ratea@aclumontana.org

*Attorneys for Plaintiff*

*Pro Hac Vice* Forthcoming

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA

BLACKFEET NATION,

    Plaintiff,

vs.

COREY STAPLETON, in his official
capacity as Montana Secretary of State,
THE COUNTY OF PONDERA, as a
political subdivision organized under
the laws of the State of Montana,
KODY FARKELL, in her official
capacity as Pondera County Clerk &
Recorder/Election Administrator,
DALE J. SEIFERT, in his official
capacity as Pondera County
Commissioner, THOMAS A. KUKA,
in his official capacity as Pondera
County Commissioner, and JIM
MORREN, in his official capacity as
Pondera County Commissioner,

    Defendants.

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

## NATURE OF THE CASE

1.  This action is initiated by the Blackfeet Nation on behalf of its tribal members who are qualified voters of the State of Montana, pursuant to the U.S. and Montana Constitutions, the Voting Rights Act of 1965, and Montana State directives and orders.

2.  At issue in this case is Defendants' refusal, despite timely requests, to establish a site that provides in-person voter registration, in-person early voting, and Election Day voting (hereinafter "satellite office") on the Blackfeet Indian Reservation. Defendants have, however, established in-person voting off-Reservation in Conrad,

Montana, almost sixty miles away from the required satellite office in Heart Butte, Montana, and nearly eighty miles away from some Blackfeet tribal members. In fact, Heart Butte is the farthest distance from Conrad from anywhere in Pondera County.

3.      The vast majority of Blackfeet members lack residential home mail delivery and so cannot vote safely from home during the COVID-19 pandemic. Accessing mail is difficult, costly, and at this time, unsafe. Additionally, due to socioeconomic factors, such as poverty, homelessness, and lack of reliable public and private transportation, the significantly greater distance required for them to reach the voting site will make it substantially more difficult, if not impossible, for them to take advantage of the convenience and benefits of in-person registration, in-person early voting, and Election Day in-person voting. All of these options are available to off-reservation residents of Pondera County.

4.      Indeed, a Montana State District Court recently outlined the many difficulties Native American voters face in Montana. *See* Court's Findings of Fact, Conclusions of Law and Order, *Western Native Voice v. Stapleton*, Cause No. DV 20-0377 (Sept. 25, 2020).

5.      Without a satellite office, voting is less available to members of the Blackfeet Nation in Pondera County in violation of Section 2 of the Voting Rights Act of 1965, the Fourteenth Amendment to the United States Constitution, the Constitution of the State of

Montana, Secretary of State Election Directive #01-2015 and Governor Bullock's August 6, 2020 Directive Implementing Executive Orders 2-2020 and 3-2020.

6.      Defendants' failure to establish a satellite office has a significant disparate impact on Tribal members' voting power, denies the Plaintiff's members of the right to vote, and is an apparent attempt to dilute the voting strength of those members.

7.      If such inaction is allowed, the ability of Blackfeet members to effectively participate in the political process will be hindered.  Plaintiff seeks declaratory and injunctive relief, both temporary and permanent, as well as a temporary restraining order, compelling the Defendants to establish a satellite election office in Heart Butte, Montana. This relief is sought on the grounds that failure to open the satellite office is a denial of the equal right to vote, the lack of a satellite office has a disparate and immensely burdensome impact upon Tribal members, and that the denial violates Secretary of State Election Directive #01-2015, Ex. K, and Governor Bullock's August 6, 2020 Directive Implementing Executive Orders 2-2020 and 3-2020, Ex. L.

8.      The failure to establish a satellite office location will result in Tribal members having less opportunity than white citizens to participate in the political process and elect candidates of their choice for federal, state, and county offices.

9.      Defendants have no legitimate, non-racial reason for refusing to establish the satellite office.  The COVID-19 pandemic is insufficient justification given that an in-person, early voting option is available in the mostly non-Indian community of Conrad,

Montana. And the County Clerk has just recently agreed to assist with training election workers in Roosevelt County on the Fort Peck reservation next week, and therefore there are no time constraints to training or implementing a satellite office.

10.     Accordingly, Plaintiff asks this Court to grant it declaratory and injunctive relief compelling Defendants to establish a satellite office at the Heart Butte High School in Heart Butte, Montana on Monday, October 19 from 9-5PM; Monday, October 26 from 9-5PM; Monday November 2 from 9-5 PM; and on Election Day Tuesday, November 3 from 9-5PM.

## AUTHORITY

11.     This action is brought by Plaintiff pursuant to Sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301 (formerly codified at 42 U.S.C. 1973); 42 U.S.C. § 1983, providing for civil action for deprivation of rights; the Fourteenth Amendment to the United States Constitution; 28 U.S.C. §§ 2201–2202 providing for declaratory relief and other necessary or proper relief; and Article 2 of the Constitution of the State of Montana.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear claims under the Constitution and laws of the State of Montana.

## JURISDICTION AND VENUE

12.     This case arises in large part under the Constitution and laws of the United States.  This case has original jurisdiction over this matter pursuant to 52 U.S.C. § 10308(f); 42 U.S.C. § 1983; 28 U.S.C. § 1362; 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3)

and (4); and 28 U.S.C. § 2201 and 2202, along with Article III of the United States Constitution.

13.    Declaratory relief is authorized by 28 U.S.C. § 2201 and 2202.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this action is predicated upon a federal question and a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this District.

## PARTIES

15.    Plaintiff, Blackfeet Nation, is a federally recognized tribe with 17,321 enrolled members, approximately 7,000 of which live on the Blackfeet reservation. The reservation is located in northern Montana and covers approximately 1.5 million acres. The reservation is intersected by Glacier and Pondera counties. The Blackfeet Nation asserts claims based on its own injuries and on behalf of its members as *parens patriae.*

16.    Defendant Corey Stapleton is the Montana Secretary of State and is sued in his official capacity.

17.    Defendant Pondera County is a political subdivision organized under the laws of the state of Montana.

18.    Defendant Kody Farkell is the Pondera County Clerk & Recorder/Election Administrator and is sued in her official capacity.

19.    Defendant Dale J. Seifert is a member of Pondera County Commission and is sued in his official capacity.

20.    Defendant Thomas A. Kuka is a member of Pondera County Commission and is sued in his official capacity.

21.    Defendant Jim Morren is a member of Pondera County Commission and is sued in his official capacity.

## STATEMENT OF FACTS

*Blackfeet's Early Request for a Satellite Office and the Abrupt Closure of that Office*

22.    On December 30, 2019, Defendant Pondera County asked Plaintiff the Blackfeet Tribe that if it desired a satellite election office for the primary to respond in writing by January 31, 2020. Ex. A.

23.     Seeking to ensure that all its members would have access to vote in 2020 as they did in previous elections, on January 17, 2020, Blackfeet timely submitted a written request to Pondera County for a primary satellite office. Ex. B.

24.    This was done pursuant to Secretary of State Election Directive #01-2015, which was signed pursuant to Title 13 of the Montana Code as well as this Court's statement in the *Wandering Medicine v. McCulloch* litigation.

25.    In February 2020, Pondera County formally approved Blackfeet's request for a satellite office for the primary, and also approved a satellite office for the general election, via Resolution #22-2019/2020. Ex. D.

26.    In the Resolution, the Commissioners "further resolved" that "the days and hours will be evaluated after the June 2, 2020 Federal Primary Election and adapted, if necessary, prior to setting those days and hours for future elections." *Id.*

27.    Given this resolution, the Tribe reasonably assumed its January 17, 2020 request for a satellite location was good for the general election and that the request had been approved.

28.    On April 22, 2020, Defendants sent a letter, via certified mail, to the Blackfeet Tribal Council that the satellite office had been cancelled for the June 2 Primary Election. Ex. E.

29.    The Defendants' sent a letter via certified mail to the Blackfeet Council despite the request that any correspondence be sent to the Tribe's attorney via email.

30.    The letter was received by the office on April 27, but due to Blackfeet office closures caused by the COVID-19 pandemic and to the Defendants' failure to send the letter to Plaintiff's attorney as requested, Plaintiff did not receive this notification for several months.

31.    The April 22 letter from the Defendants only purported to apply to the primary election, and did not indicate it had any effect on the general election.

### *Defendant's Move to a Mail-In Election Except for the Off Reservation In-Person Voting Location in Conrad, Montana*

32.    In response to the COVID-19 pandemic, the State of Montana authorized counties to conduct mail ballot elections as opposed to traditional polling place elections.

8

33.    Pursuant to this authorization, Pondera County is administering a mail ballot election for the vast majority of the County.

34.    Pondera County, however, is still providing in-person early voting at the Pondera County Courthouse in Conrad, Montana, which began on October 2, 2020. Election Day in-person voting is available at the Courthouse in Conrad as well.

35.    The in-person voting location in Conrad, Montana, is nearly 60 miles, or approximately one hour's drive from Heart Butte, Montana.

36.    A round-trip from Heart Butte to Conrad would take approximately two hours to make by car.

***Blackfeet's Repeated Request for a Satellite Office and Defendants' Denial Due to Timing***

37.    On September 4, 2020, Blackfeet formally reaffirmed its January 17 request for a satellite office with regard to the 2020 General Election and future elections. Ex. F.

38.    The letter also explained the delays the Tribe experienced receiving the County's April 22 letter via certified mail due to COVID-19 staffing shortages and reminded the County that the Tribe requested that correspondence be sent to their General Counsel, Dawn Gray.

39.    In the September 4 letter, Blackfeet outlined the challenges Blackfeet voters face to access the mail-in voting process and why an all-mail-in election for Blackfeet voters in Pondera County would disenfranchise those voters. Given these immense challenges, Blackfeet reaffirmed its January request for a satellite office.

40.    Two weeks later, on September 18, 2020, Defendant again sent correspondence via certified mail to the Blackfeet council. Ex. G.

41.    Given the time it takes for mail to be delivered in northern Montana on the Blackfeet reservation, the letter was not received until September 23, 2020.

42.    In the September 18 letter, despite Plaintiff's request and approval for a satellite office in January, and despite no notice that the satellite office would not be honored, Defendant denied the reasonable request for a satellite office due to "time constraints."

43.    On October 6, 2020, Blackfeet emailed Defendants again requesting a satellite office for the 2020 General Election. Ex. H.

44.    In the October 6 letter, Blackfeet again outlined their timely request for a satellite office, why the failure to provide a satellite office is an unreasonable burden on Blackfeet voters, and why the Defendants' asserted reasons for denying the satellite office were unreasonable and lacked merit.

45.    With regard to the burden on Blackfeet voters, the October 6 letter outlined why vote by mail is not a reasonable alternative and in fact increases the chance that Blackfeet voters will be exposed to COVID-19 as explained in more detail below.

46.    With regard to the Defendant's reasoning, Blackfeet advised that training for a satellite office should have taken place in January, when Blackfeet's original request was

made, and that it was Plaintiff's understanding that the Secretary of State was willing to assist with training presently.

47.     Further, the county clerk of Roosevelt County has agreed to train election workers for Roosevelt County the week of October 11th for the Fort Peck Reservation and therefore any argument about "time constraints" is unavailing.

48.     On October 7, 2020, Defendants responded to Blackfeet's email again refusing to establish a satellite office in Heart Butte. Ex. I.

49.     Defendants stated "the hours needed to train individuals to staff the satellite office would not be feasible."

50.     Given that a Montana county clerk has agreed to train election workers for Roosevelt County the week of October 11th for the Fort Peck Reservation, any assertion that there is not sufficient time to train individuals is, again, unavailing.

51.     Further, the Blackfeet Nation can readily identify qualified individuals ready and willing to be trained as Election Judges.

52.     In their October 7 letter, Defendants referred Blackfeet and its members to the options of early and Election Day in-person voting in Conrad, Montana or to voting by mail.

53.     As the Pondera County Election Administrator, it is Defendant Kody Farkell's responsibility to ensure election officials staffing a satellite election office are trained.

54.     Ms. Farkell should have begun that process in January when Blackfeet first made its request.

55.     Ms. Farkell has successfully run a satellite voting location on Blackfeet Nation in Heart Butte in the past.

***Defendant's Proposal is Insufficient and Denies Blackfeet Tribal Members an Equal Opportunity to Vote***

56.     The proposed voting options for Blackfeet Tribal members are insufficient and do not give them an equal opportunity to vote.

57.     In-person voting in Conrad, Montana is not accessible to those living on the Blackfeet Indian Reservation because it is unreasonably far away and creates an unlawful burden on the right to vote for Blackfeet members.

58.     And voting by mail also places disproportionate and heavy burdens on Blackfeet voters.

59.     A State Judicial District Court in Montana recently highlighted the many barriers Tribal Nations and their members face to vote in Montana. *See* Court's Findings of Fact, Conclusions of Law and Order, *Western Native Voice v. Stapleton*, Cause No. DV 20-0377 (Sept. 25, 2020).

60.     In particular, the Court highlighted the difficulties Native voters face when they attempt to vote by mail and the geographic and other barriers that they face. *Id*. at 11-16.

61.     According to the census.gov, https://www.census.gov/quickfacts/MT, the overall poverty rate of the State of Montana is 12.6%

62.     The Blackfeet Nation has nearly triple the poverty rate of the state of Montana at 35.8%.

63.     Given the extreme poverty, Blackfeet members cannot always afford a tank of gas and instead may choose to spend limited funds on necessities such as food or heating.

64.     Lack of access to a vehicle, or shared vehicles is also very common on the Blackfeet Reservation.

65.     One vehicle is often responsible for getting many members of a household to and from work or school, to all social engagements, all doctor's appointments, and all errands including mail runs. Dependable vehicles that can manage difficult road conditions are even rarer, making a working vehicle in the election month of November especially difficult to come by.

66.     Vote by mail is not a reasonable alternative to the in-person voting that would be available at a satellite election office.

67.     Indeed, as Defendants are aware, houses on Blackfeet do not receive mail delivery.

68.     As a consequence, tribal members rely on P.O. boxes to send and receive mail.

69.     Often, tribal members share P.O. boxes because there is a fee associated with the boxes, because there may not be enough boxes to service the entire population, and because members often cannot regularly pick up their own mail and must depend on others to pick up and deliver their mail for them.

70.     Distance to post offices varies widely among members living on the reservation.

71.     Some members might live within a mile of the post office while others live upwards of 20 miles from the post office.

72.     Even when a post office is "close," travel to the post office may still be difficult for members that lack access to a vehicle, especially given the harsh weather on the Blackfeet reservation.

73.     Snow is present 8-9 months of the year on the Blackfeet reservation.

74.     Snow, ice, and mud can make travelling difficult or roads impassable.

75.     The only post office on the Blackfeet reservation in Pondera County is in Heart Butte and is open limited hours of 8:15 am to 11:30 am and 12:00 pm to 2:45 pm and is completely closed on Saturdays.  In fact, there are no post offices in Pondera County fully open from 8:30 am to 5:00 pm.  The post office in Conrad is open the most hours at 7.5 hours daily, but it is 57.7 miles away, one-way

76.     Even if members can successfully travel to the post office to vote, it is not as safe as a satellite office option would be.

77.     Tribal members would have to interact with a person at the post office, or have an interaction with someone who has picked up or will drop off their ballot for them.

78.     These interactions do not necessarily occur with proper personal protective equipment (PPE) and social distancing.

79.     Given the difficulties accessing mail, it is common for mail to be picked up once a week, once a month, or more.

80.     At times, mail can be significantly delayed due to multiple people accessing one P.O. Box.

81.     The safer in-person option is through a satellite election office at Heart Butte High School with proper PPE, social distancing, and curbside voting options.

82.     Blackfeet tribal members prefer to vote on the reservation instead of travelling off the reservation.

83.     Heart Butte, Montana – the site of Blackfeet's proposed satellite election office – is 93.7% Native American.

84.     Conrad, Montana –the site of Blackfeet's only in-person voting option at the Pondera County Courthouse – is 95.1% white

85.     Racial tensions exist between Blackfeet tribal members and the border town in Conrad and some tribal members are not comfortable travelling to Conrad in order to vote

86.     Racial tensions between Native Americans and border town communities was well documented in the May, 2019 United States Commission on Civil Rights report entitled "Bordertown Discrimination in Montana", https://www.usccr.gov/pubs/2019/05-29-Bordertown-Discrimination-Montana.pdf, (attached as Ex. N) the findings of which are incorporated into this Complaint by reference. Montana has repeatedly been the subject of litigation due to its inequitable treatment of Native Americans' access to voting practices and procedures.

87.     The USCCR report notes "[r]ecent litigation in Montana has centered around voter registration and access to the ballot inequalities for Native Americans. The committee is aware that Native Americans by and large have non-traditional mailing addresses and suffer great distances to travel for in-person voting."

88.     In 2012, Montanan tribes filed suit in *Wandering Medicine v. McCulloch* challenging the very issue in this case – the failure of counties to provide satellite election offices on tribal lands.

89.     On March 26, 2014, the Honorable Donald Molloy denied the Defendants' Motion to Dismiss in *Wandering Medicine,* permitting Plaintiffs' Voting Rights Act and Equal Protection claims to proceed.   The facts underlying Judge Molloy's order are virtually identical to the case at bar. Ex. O.

90.     The *Wandering Medicine Case* was ultimately settled, and the settlement agreement requires tribes and county officials to work together to determine the location and operation hours of satellite offices. Ex. M.

91.     Through Election Directive #01-2015, the Secretary of State expanded the settlement and mandated that all Montana counties with an American Indian reservation, including Pondera County, implement the essential terms of the *Wandering Medicine* Settlement. Specifically, Election Directive #01-2015 requires counties to open satellite election offices on reservations if required to protect the voting rights of tribal members under the Voting Rights Act. Ex K.

92.     Just two weeks ago, the Montana Thirteenth Judicial District Court, County of Yellowstone, vindicated the Blackfeet Nation's legal challenge to voting procedures that hindered its tribal members' ability to vote. The court held that the Ballot Interference Prevention Act violates tribes' constitutional rights to vote, to free speech, and to due process of law. *Western Native Voice v. Stapleton,* DV-2020-377 (September 25, 2020). In its Order, the court noted that the case included "questions of equality under law" and remarked how, "[t]his case and the facts presented at trial turn a spot light to our fellow citizens that still live below the poverty line with limits to health care, government services, mail services and election offices – those citizens are the Native Americans that reside on reservations within Montana's borders." *Id.*

93.     Pondera County's move to vote by mail is yet another voting procedure that makes it more difficult for Blackfeet Indian Reservation Members to vote and is unlawful. *See, e.g.*, *Spirit Lake Tribe v. Benson Cnty.*, No. 10-cv-95 (D. N.D. Oct. 6, 2011) (preliminary injunction granted due to disproportionate impact of move to vote by mail on Native American community).

94.     The refusal to establish a satellite election office in Heart Butte, Montana on the Blackfeet Reservation violates the rights of Blackfeet's members to participate in the political process and will unconstitutionally limit their political power.

95.     The burdens placed on Blackfeet voters are in part caused by or linked to social and historical conditions that have or currently produce discrimination against Blackfeet voters.

96.     There are no legitimate interests that justify placing these burdens on the right to vote.

97.     Indeed, the policy and reasoning underlying the denial is tenuous.

## CAUSES OF ACTION

### CLAIM ONE
### VIOLATION OF THE EQUAL PROTECTION CLAUSE
### OF THE FOURTEENTH AMENDMENT

98.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

99.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

100.    The Fourteenth Amendment prohibits the imposition of severe burdens on the fundamental right to vote unless they are "narrowly drawn to advance a compelling state interest." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation omitted).

101.    The fact that Pondera County has established satellite voting locations in the past "bolsters" Plaintiffs' Equal Protection claims. *See,* Order Denying Motion to Dismiss, *Wandering Medicine v. McCulloch*, Cause No. CV 12-135-BLG-DWM (March 26, 2014) (holding, "Plaintiffs present a plausible claim for discriminatory intent and that the law, as alleged, bears more heavily on Indians than other races. The potential for such a claim is bolstered by the allegation that Rosebud County, one of the counties in question, has established these types of offices before, *(id.* at ~ 118), but has refused to do so in the present instance.").

102.    Forcing Blackfeet voters to travel extreme distances to vote is a severe burden on their right to vote.

103.    Permitting in-person early voting at the Pondera County Courthouse in Conrad, Montana, which began on October 2, 2020, and Election Day in-person voting at the Courthouse in Conrad, and denying it to Blackfeet voters is clearly discriminatory.

104.   Forcing Blackfeet tribal members who disproportionately lack residential mail pick up or delivery relative to the white voters in Pondera County to vote by mail is discriminatory.

105.   The Defendants' stated interest is not compelling, and the denial is not narrowly tailored to advance the Defendants' asserted interests.

106.   Plaintiff will continue to suffer the violation of these rights as alleged in the Complaint absent relief granted by the Court.

## CLAIM TWO
## VIOLATION OF THE VOTING RIGHTS ACT OF 1965

107.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

108.   Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, protects Plaintiff from denial or abridgment of the right to vote on account of race, color, or membership in a language minority group.  Section 2 provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color," or membership in a language minority group. 52 U.S.C. § 10301.

109.   To be Native American is both a political affiliation and a race and Native Americans are recognized as a language minority group under the Voting Rights Act.

110.   Defendants' failure to establish a satellite office location on the Blackfeet Reservation disparately impacts members of the Plaintiff Tribe relative to other members of the electorates' ability to participate in the political process and elect representative of their choice, in violation of Section 2 of the Voting Rights Act.

111.   Defendants' move to vote by mail disparately impacts Native Americans residing on the Blackfeet reservation due to the lack of residential mail delivery on the reservation and the increased burdens Native Americans face due to poverty, road conditions, and lack of access to road-ready vehicles, in violation of Section 2 of the Voting Rights Act.

112.   As recent as this year, Plaintiffs were forced to sue for relief from discriminatory voting practices. *Western Native Voice vs. Stapleton,* DV-2020-377 (September 25, 2020).

113.   The very issue of this case has already been litigated through the *Wandering Medicine* case, and the subsequent settlement obligations extended to Ponderosa County via Election Directive #01-2015.

114.   Plaintiffs suffer disproportionately from poverty, low educational attainment, are disproportionately incarcerated, and are in poorer health than white Montanans, hindering their ability to effectively participate in the political process.

115.   Plaintiff will continue to suffer the violation of these rights as alleged in the Complaint absent relief granted by the Court.

## CLAIM THREE
## VIOLATION OF THE MONTANA CONSTITUTION

116.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

117.   Defendants have acted to deprive the voters of Blackfeet Nation equal elections by arbitrarily failing to establish a satellite office location on the Blackfeet reservation in violation of the Constitution of the State of Montana.

118.   Montana's Constitution explicitly protects the right to vote.  It states: "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Mont. Const. art. II, § 13.

119.   The right to vote is a "fundamental right." *Willems v. State*, 325 P.3d 1204 ¶ 32 (Mont. 2004).

120.   As a fundamental right, "any infringement of [the right] will trigger the highest level of scrutiny, and, thus, the highest level of protection by the courts." *Kloss v. Edward D. Jones & Co*., 54 P.3d 1 ¶ 52 (Mont. 2002), on reh'g in part, 57 P.3d 41 ¶ 52 (Mont. 2002).

121.   Montana's fundamental rights - those that are either found in the Declaration of Rights or rights "without which other constitutionally guaranteed rights would have little meaning" - are evaluated on a strict scrutiny standard. *Butte Cmty. Union v. Lewis,* (1986), 712 P.2d 1309, 1311 (Mont. 1986); *Snetsinger v. Mont. Univ. Sys*., 104 P.3d 445

(Mont. 2004); *see also Oberg v. Billings*, 674 P.2d 494 (Mont. 1983) ("Examples of fundamental rights include privacy, freedom of speech, freedom of religion, right to vote and right to interstate travel.").

122.   Because voting rights cases involve a fundamental political right an infringement of the right to vote is also evaluated under the "strict scrutiny standard." *Johnson v. Killingsworth*, 894 P.2d 272, 273 (Mont. 1995).

123.   "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Big Spring v. Jore*, 109 P.3d 219 ¶ 18 (Mont. 2005).

124.   The Defendant's approval of a satellite office and then removal of that office on the Blackfeet reservation places an immense burden on the right of the Blackfeet people to vote, and is a violation of the Montana Constitution.

125.   There is no compelling reason to deny a satellite office, and the denial is not narrowly tailored to effectuate any compelling interest.

126.   Plaintiff will continue to suffer the violation of these rights as alleged in this Complaint absent relief granted by the Court.

## CLAIM FOUR
## VIOLATION OF THE MONTANA SECRETARY OF STATE
## ELECTION DIRECTIVE #10-2015

127.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

128.   Montana Secretary of State Election Directive #01-2015 requires each county with an American Indian reservation that includes voting-eligible residents to open satellite elections offices on those reservations and requires that those offices provide in-person absentee voting and late registration services equivalent to the services offered at the main county elections office. Ex. K.

129.   Defendants have refused to open a satellite office for Blackfeet despite repeated timely and reasonable requests.

130.   Yet, Defendants maintain an in-person voting office at the Conrad Courthouse, which is a significant distance away from Blackfeet, for non-Indian voters.

131.   Defendants' failure to open a satellite office in Heart Butte, Montana is a violation of the Directive.

132.   Without an order requiring a satellite office in Heart Butte, Montana, Defendants will continue to violate the Directive.

### RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in its favor as follows:

1.   That this Court assume jurisdiction;

2.   That this Court declare that the Defendants' failure to provide a satellite office on the Blackfeet Indian Reservation violates existing law, including, but not limited to, § 2 of the Voting Rights Act, as amended, the Fourteenth Amendment to the United States

Constitution, the Montana Constitution, and Montana Secretary of State Election Directive #10-2015.

3.      That this Court grant preliminary and permanent injunctive relief by ordering Defendants to establish a satellite election office with in-person early registration and in-person early voting on the Blackfeet Indian Reservation beginning on Monday, October 19 from 9-5PM; Monday, October 26 from 9-5PM; Monday November 2 from 9-5PM; and on Election Day Tuesday, November 3 from 9-5PM, for the full period authorized by Montana law for all future elections, and further relief as the interest of justice may require;

4.      Issue an order pursuant to the Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c) requiring Pondera County to obtain preclearance, for a necessary and appropriate period of time, from the Attorney General of the United States for any and all future changes in voting law, upon a determination that Pondera County has shown that the proposed changes do not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color;

5.      Grant Plaintiff reasonable attorneys' fees, litigation expenses, and costs pursuant to 52 U.S.C. § 10310, 42 U.S.C. § 1973(e) and § 1988, and the private attorney general doctrine; and

6.      Grant the Plaintiff any further relief which may in the discretion of the Court be necessary and proper to ensure that the voting rights of Indians within Pondera County are properly respected in accordance with the Orders of this Court.

DATED this 9th day of October, 2020.

/s/ Wesley James Furlong
Wesley James Furlong (MT Bar No. 42771409)
Jacqueline De León*
Matthew L. Campbell*
Samantha Kelty*
NATIVE AMERICAN RIGHTS FUND

/s/ Alex Rate
Alex Rate (MT Bar No. 11226)
ACLU OF MONTANA

ATTORNEYS FOR PLAINTIFF

* Pro Hac Vice forthcoming